Traders & General Ins. Co. *v.* Williams.

5-1721                                  319 S. W. 2d 847

Opinion delivered January 12, 1959.

[Rehearing denied February 9, 1959]

*Shaw, Jones & Shaw,* for appellant.

*Roy Dunn,* for appellee.

Ed. F. McFaddin, Associate Justice. This appeal is in an action filed by appellee, Williams, against the appellant, Traders & General Insurance Company (hereinafter called ''Insurance Company''), for recovery under a policy.

On March 28, 1957, the Insurance Company issued to Williams a policy insuring him against collision damage, in excess of $50.00, to his new 1957 Chrysler New Yorker automobile, which had a list price of $5,700.00. On December 3, 1957 the automobile was damaged in a collision. Williams claimed the damage to be $2,050.00.

The Insurance Company refused to do anything about paying the damage or repairing the car unless and until Williams would sign a release, and then the Insurance Company would undertake to have the car repaired at an expense of approximately $300.00. When Williams refused to sign such a release, the Insurance Company cancelled his policy as of February 1, 1958 and owed him $47.11 return premium, which was never paid.

Williams filed action against the Insurance Company on March 3, 1958 and claimed damages of $2,000.00, plus penalty and attorney's fee, and plus the $47.11 return premium due him. He attached a copy of the insurance policy as an exhibit to the complaint[1] and alleged the facts substantially as above stated. After the Insurance Company's demurrer was overruled, answer was filed containing a general denial and pleading a limit of liability. There was a jury trial, with judgment for appellee for $2,000.00, plus $47.11 refund on premium, plus 12% penalty, and plus $750.00 attorney's fee. On appeal appellant urges the three points herein listed and discussed.

I. *Overruling Demurrer.* The Insurance Company demurred to the complaint, saying, (a) that it did not state facts sufficient to constitute a cause of action; and (b) that the measure of recovery alleged in

[1] The complaint also contained these allegations: "On December 3rd, 1957, at a time when said insurance was in full force and effect plaintiff's car herein described was damaged by collision. The value of said car immediately before the collision was $3,850.00, and the value of said car immediately after the said collision was $1,800.00. The loss to plaintiff by reason of said collision was $2,050.00 . . . "Plaintiff has made demand for payment on the Insurance Company and repeatedly requested the Traders & General Insurance Company to comply with its contract with plaintiff, but said defendant has failed and refused to do so and on January 22nd, 1958, C. A. Phillips, Special Agent for Traders & General Insurance Company, and while acting within the scope of his authority, called on plaintiff in Booneville, Arkansas and stated that defendant, Traders & General Insurance Company, did not intend to comply with its contract and it was plaintiff's next move. That the Agent, Phillips, on the date he called on plaintiff in Booneville signed and executed a 'Notice of Cancellation of the aforesaid policy' and caused it to be delivered to plaintiff, said notice being to the effect that the Policy of insurance herein sued on was cancelled by the defendant, Insurance Company, as of February 1st, 1958, making no offer or tender of return of any portion of the paid premium."

the complaint (the difference in value before and after the collision) was not the correct measure of damage. The Court was correct in overruling the demurrer. The complaint alleged that the Insurance Company had cancelled a policy of insurance and refused to return the unearned premium, and the complaint prayed for such return. The complaint also alleged that the Insurance Company had issued a policy insuring against collision; that there had been a collision; that the Insurance Company had admitted liability but had failed and refused to pay the loss; and that the plaintiffs were entitled to recover $2,000.00 under the policy. Whether the damage to the car was more or less than the limit of liability, was a matter that could not be established until the evidence was offered. The complaint stated a cause of action for recovery.

II. The appellant says: *"The court erred in permitting evidence to be introduced as to the difference in the fair market value of the plaintiff's vehicle immediately before and immediately after the accident."* This brings us to the most vigorously contested point on the appeal. The policy issued to Williams contained this language as to the liability of the Insurance Company for collision damage:

*"Limit of Liability.* The limit of the company's liability for loss shall not exceed the actual cash value of the property, or if the loss is of a part thereof the actual cash value of such part, at time of loss, nor what it would then cost to repair or replace the property or such part thereof with other of like kind and quality, nor the applicable limit of liability stated in the declarations; . . ."

Appellant insists that the appellee sought to prove damages by the "value method" — that is, the difference in the fair market value of the car before and after the collision — rather than by the "cost of repair method"; and appellant says that the Court erred in allowing all such evidence as to the value method. Appellant points out that witnesses for Williams stated that

the value of the car before the collision was $3,900.00 and that the value after the collision was somewhere between $1,200.00 and $1,800.00. Appellee counters with the arguments: (a) that he not only introduced evidence of "value", but also introduced evidence of "cost of repair"; and that (b) the Court instructed the jury that the Insurance Company's *limit of liability* was the cost of repair, and the case was submitted to the jury on that basis.

The record sustains the appellee on both of his answers. The witness, Grady Starling, was the Chrysler dealer at Booneville who had sold the car to Williams. Starling also operated a repair department and was familiar with the cost of repairs; and after the collision he checked the car as to the cost of labor and parts to make the necessary repairs. He itemized the parts and the cost of each. The total cost of the parts was $1,312.94; and the cost of the labor to repair the car was $740.00; making a total cost of repair of $2,-052.94. Starling testified that even this expenditure would not make the car as good as it was before the collision, but that the expenditure of $2,052.94 was necessary to repair the car.

The Trial Court instructed the jury in Instruction No. 5, requested by the Insurance Company:

"You are instructed that the policy or contract between the plaintiff and defendant, Traders & General Insurance Company, provides that in the event of a collision involving the plaintiff's vehicle, the defendant is, under the terms of said policy or contract, liable only for the reasonable cost[2] of repair of said vehicle or for the cost of replacing any parts of said vehicle which may have been damaged as a result of the said collision, with other parts of like kind and quality."

Thus, there was evidence offered by the plaintiff not only as to the damage to the car but also as to the

---

[2] In Instruction No. 7 the Court further reduced the plaintiff's recovery by the amount of $50.00, which was the deductible amount under the policy.

cost of repairs and the instruction told the jury that the defendant's limit of liability was the cost of repair, provided the repair would "replace the property".

The appellant insists that all the evidence of *value before and after the collision* was inadmissible and prejudicial; but we do not agree with such contention.[3] The Insurance Company delivered to Williams a policy which stated in the coverage section as regards collision, ". . . to pay for loss caused by collision to the owned automobile . . . but only for the amount of each such loss in excess of the deductible amount stated in the declarations as applicable hereto". (The deductible amount was stated at $50.00.) So, in the light of the above quoted section, the Insurance Company was liable for all collision loss in excess of $50.00. What was the loss? Unless otherwise limited, it was the difference in value before and after the collision. But in another section of the policy the Insurance Company had limited its liability as regards collision loss to, ". . . what it would then cost to repair or replace the property or such part thereof with other of like kind and quality . . ."

When we consider together these two sections of the policy, it is clear that Williams was entitled to show (a) his loss by the "before and after" value rule; and then (b) to completely establish that his loss was within the limit of liability he could show the cost of repairs. There was certainly no error in allowing the evidence offered, and the instruction given by the Trial Court at the request of the defendant made the point clear.[4]

---

[3] In 43 A.L.R. 2d 327 *et seq.* there is an annotation entitled, "Measure of recovery by insured under automobile collision insurance policy", in which cases with various policy provisions are listed and discussed. Three of our cases somewhat similar to the one at bar are *National Ins. Co.* v. *Dalton,* 214 Ark. 120, 214 S. W. 2d 507; *Motors Ins. Corp.* v. *Lopez,* 217 Ark. 203, 229 S. W. 2d 228; and *Resolute Ins. Co.* v. *Bailey,* 221 Ark. 419, 253 S. W. 2d 771.

[4] The Court also further explained to the attorneys for the Insurance Company the purport of his holding when he declared to them in the course of the instructions: "The Court has permitted the introduction of evidence as to what the fair market value of the plaintiff's car was immediately before the collision and as to what the fair market value was immediately after the collision. The Court permitted the in-

III. *Attorney's Fee.* The judgment reflects that the Trial Court heard evidence as to what would be a reasonable attorney's fee and then fixed the fee at $750.00. We cannot find such evidence in the record regarding the fixing of attorney's fee; but, even so, we hold that the fee fixed is not excessive.[5] The statute regarding the liability of an insurance company for penalty and attorney's fee for failure to promptly pay a reasonable loss is § 66-514 Ark. Stats. It is hard to conceive of a more arbitrary position than the Insurance Company took in its dealings with Williams. When the insured refused to agree to the Insurance Company's demands, the Company cancelled the policy; and to make matters worse, refused to return the unearned premium. When the insured brought action, the Insurance Company contested every step, but without success.

The Court fixed the attorney's fee at $750.00, which was evidently intended to take care of the fee on appeal as well as in the Trial Court, because we find this language in the appellee's brief:

"Some of the obvious matters, which the trial court considers in fixing the fee, are the amount of work involved, the amount in dispute, the skill required, and whether an appeal is taken and if so, what is involved on appeal. . . . the maneuvers of the company representatives indicated that the company had no intention of paying its coverage until compelled to do so by this appellate court."

The fee fixed is not excessive for trial of a case like this before a jury and then the briefing and handling of the case on appeal.

The judgment is in all things affirmed.

---

troduction of that evidence only for the jury's consideration in determining the company's liability under the provisions of the policy, as you have been instructed by other instructions herein. Such is not the measure of the defendant's liability."

[5] In 10 Ark. Law Review 439, there is an article entitled, "One State's Experience with the Statutory Remedy for Insurer's Delays: A Problem in Payment." This article contains a splendid study of our cases in reasonable attorney's fees.